UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Sid Brooks

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case No. |
| CHRISTIAN ROBERT HENDRICKSON | ) | 11-23319-SBB |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| SJR REAL ESTATE, L.L.C. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 11-01648-SBB |
| CHRISTIAN ROBERT HENDRICKSON | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

THIS MATTER comes before the Court on Chris Hendrickson's Motion to Dismiss Adversary Proceeding ("Motion to Dismiss"), filed on October 27, 2011 (Docket #10), and the Response thereto ("Response"), filed on November 21, 2011 (Docket #15).

**I.    SUMMARY**

Creditor/Plaintiff SJR Real Estate Colorado, LLC ("Plaintiff") asserts multiple claims to establish the nondischargeability of debts it contends are owed to it by Debtor/Defendant Christian Robert Hendrickson ("Defendant") under 11 U.S.C. § 523(a)(2)(A), (4), and (6).  Defendant has moved to dismiss the claims against him under FED. R. CIV. P. 12(b)(6).  Plaintiff disputes that dismissal is warranted, but asks that, in the event that the court finds that its claims are deficiently pled, it permitted to file an amended complaint  For the reasons stated below, the Court hereby denies the Motion to Dismiss and grants Plaintiff's request for leave to file an amended complaint.

**II.   BACKGROUND**

Defendant filed his petition for bankruptcy under Chapter 7 on June 3, 2011.  Plaintiff filed a Complaint to Determine Dischargeability of Debt on September 23, 2011 ("Complaint").

In its Complaint, Plaintiff asserts that Defendant was the managing member and principal employee of Talus Development, LLC ("Talus"), a Colorado limited liability company.  Plaintiff further asserts that, in or around May 17, 2006, Plaintiff finalized a written fixed contract amount agreement  ("Contract") with Talus for the construction of a multi-unit building at 28th and Stout,

in Denver, Colorado (the "Stout Project").  According to Plaintiff, in negotiating the Contract, Defendant provided architectural plans with specifications detailing how the Stout Project would be built, even though he knew that the representations therein were false, and that he did so intentionally in order to induce Plaintiff to purchase the land and enter into the Contract.  Plaintiff states that it reasonably relied upon Henrickson's representations that workers would follow the specifications.

Plaintiff asserts that the Contract required Talus to submit draw requests periodically to Plaintiff for work that was completed as of the date of the draw request.  Following receipt of the draw requests, Plaintiff was to pay Talus for the amounts requested.

According to Plaintiff, Defendant both misrepresented the work done and misused the funds that Plaintiff was paying to Talus.  Specifically, Plaintiff asserts that Defendant, in his roles as manager and/or principal employee of Talus, made demand in the draw requests for payments for work that had not been completed, or that had not been performed according to specifications, or that had been performed deficiently, and that Plaintiff made payment on the basis of the representations in the draw requests that the work had been completed.  According to Plaintiff, its reliance in paying Talus based upon Defendant's representations was reasonable.  Plaintiff also contends that Defendant substituted materials of lesser quality and price than that required by the parties' contract, but charged Plaintiff the amount that would have been due for higher price items, keeping the difference, to Plaintiff's detriment.  Additionally, according to Plaintiff, the Contract required Talus to carry general liability insurance, as well as worker's compensation insurance, on all subcontractors and workers, but Talus failed to do so.

Plaintiff states that Defendant threatened to stop work at the Stout Project and record liens on the property unless payments were made immediately.  Plaintiff further asserts that Defendant demanded payments for additional amounts for change orders, though Plaintiff did not request nor agree to any such change orders.  Plaintiff further contends that, in June 2007, after Plaintiff refused to pay for incomplete and unsatisfactory work, Defendant pulled all of the subcontractors off of the Stout Project, despite the fact that Plaintiff had already been billed for and paid in advance for work by certain of those contractors.  As a result of this, Plaintiff states, it had to pay an entirely different subcontractor to do the work for which it had already paid.

Plaintiff further states that, following a contentious meeting between Plaintiff and Talus principals, Defendant made false verbal assertions to subcontractors and agents for prospective buyers that Plaintiff was unable to and had refused to pay for completion of the Stout Project.  Further, Defendant removed all keys from lockboxes on the units, making it impossible for Plaintiff's realtor to market or show the units to prospective customers, and causing the cancellation of scheduled showings.

Plaintiff states that it terminated its written agreement with Talus on or about July 5, 2007, based upon Talus' breaches of the Contract.  It further asserts that following termination of the Contract, Defendant threatened the subcontractors that if they performed any more work for Plaintiff under the supervision of a new general contractor or honored their warranties with

Plaintiff, Talus would not hire them for future jobs.

Plaintiff asserts that on or about July 27, 2007, Defendant recorded a statement of lien that represented that Plaintiff owed Talus the sum of $182,250. It further asserts that, thereafter, he recorded two amendments to the lien statements, lowering the lien amount to $178,999.39, and then to $134,000. According to Plaintiff, those amendments did not reflect payments Plaintiff had already made. Plaintiff contends that, through counsel, it requested release of the lien, advising Talus that the statements in the lien documents were false, excessive, and attributable to Talus' unreasonable delays, use of nonconforming materials, and construction defects. Despite this, Defendant allegedly refused to release the lien. Plaintiff asserts it suffered damages in the form of attorneys' fees, costs, and other charges related to bonding as a result of the misrepresentations in the lien statements.

## III.   TREATMENT OF MOTION

Defendant indicates that the Motion to Dismiss is filed pursuant to FED. R.CIV. P. 12(b)(6), which is made applicable to these proceedings by Bankruptcy Rule 7012(b). Although the parties have presented matters outside the pleadings, because the case is in its early stages, the Court exercises its discretion to exclude those matters and treats the Motion as a motion to dismiss under FED. R.CIV. P. 12(b)(6).[1]

## IV.   DISCUSSION

### A.   Claim for Nondischargeability for Fraud or Defalcation While Acting in a Fiduciary Capacity Under 11 U.S.C. § 523(a)(4)

Section 523(a)(4) provides a discharge exception for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Here, Plaintiff asserts that Defendant's debt is nondischargeable because it arises from fraud or defalcation while acting in a fiduciary capacity.

> In order to show a fiduciary relationship under § 523(a)(4), there must be an express or technical trust. . . . There are three requirements which must be satisfied in order for a statutory trust to create a fiduciary relationship which is sufficient under § 523(a)(4). There must have been a res of property entrusted to the trustee, the statute must create or identify some fiduciary duty, and the trust must be in

---

[1] *See* FED. R.CIV. P. 12(d); *Lowe v. Town of Fairland, Okla.*, 143 F.3d 1378, 1381 (10th Cir. 1998)("courts have broad discretion in determining whether or not to accept materials beyond the pleadings"). Because documents were attached to the Response, the Court could, in the alternative, exercise its discretion to treat the motion as one under FED. R.CIV. P. 56. *See* FED. R.CIV. P. 12(d).

place when the defalcation occurs.[2]

1.      Fiduciary Duty arising Under the Colorado Trust Fund Statute

Plaintiff contends that all funds that Plaintiff paid to Talus for work that Talus and Defendant represented had been completed per specifications, but that had not, and for higher quality materials that were replaced with inferior materials, constitute funds to be held in trust pursuant to the Colorado Trust Fund Statute, COLO. REV. STAT. § 38-22-127.  Plaintiff further contends that Defendant, by obtaining such funds by falsely representing that work had been completed and/or was of the quality set forth in the specifications when it was not, committed theft under Colorado's Rights in Stolen Property Statute, COLO. REV. STAT. § 18-4-405.  That statute provides:

> All property obtained by theft . . . shall be restored to the owner . . . .
> The owner may maintain an action not only against the taker thereof
> but also against any person in whose possession he finds the property.
> In any such action, the owner may recover two hundred dollars or
> three times the amount of the actual damages sustained by him,
> whichever is greater, and may also recover costs of the action and
> reasonable attorney fees. . . .

COLO. REV. STAT. § 18-4-405.

According to Plaintiff, Defendant, as managing member of Talus, was acting in a fiduciary capacity to Plaintiff with respect to funds paid pursuant to the draw requests.  By taking possession of Plaintiff's funds by virtue of his misrepresentations, Plaintiff asserts, Defendant breached his fiduciary duty.  Plaintiff contends that such conduct constitutes fraud and defalcation, and resulted in injury to it.

In relevant part, Colorado's Trust Fund Statute provides:

> (1) All funds disbursed to any contractor or subcontractor under any
> building, construction, or remodeling contract or on any construction
> project shall be held in trust for the payment of the subcontractors,
> laborer or material suppliers, or laborers who have furnished laborers,
> materials, services, or labor, who have a lien, or may have a lien,
> against the property, or who claim, or may claim, against a principal
> and surety under the provisions of this article and for which such
> disbursement was made.
>
> (5) Any person who violates the provisions of subsections (1) and (2)

---

[2] *Pritchard Concrete v. Barnes*, 377 B.R. 289, 296 (Bankr. D. Colo. 2007)(internal citations omitted).

    of this section commits theft, as defined in section 18-4-401, C.R.S.

COLO. REV. STAT. § 38-22-127. "The express language of the Trust Fund Statute creates a trust consisting of funds disbursed to a 'contractor or subcontractor . . . on any construction project . . . .'"[3] Courts have recognized that the express trust created by the statute is sufficient to establish a fiduciary relationship for purposes of 11 U.S.C. § 523(a)(4).[4]

  The language in COLO. REV. STAT. § 38-22-127 gives standing to "subcontractors, laborer or material suppliers, or laborers who have furnished laborers, materials, services, or labor."[12] However, the Colorado Court of Appeals has interpreted the Trust Fund Statute as providing standing to property owners under certain circumstances.[13] Specifically, in *Syfrett v. Pullen*, the Court of Appeals concluded that a homeowner had standing bring a claim for violation of the Trust Fund Statute where the plaintiff's "uncontroverted testimony" was that "at the time she filed her complaint, at least one material supplier had an existing mechanic's lien on her house and that several subcontractors and material suppliers remained unpaid."[14] Similarly, Judge Keller of this Court concluded in *Climax Molybdenum Co. v. Specialized Installers, Inc. (In re Specialized Installers)*,[15] that a property owner had standing under the statute because the property owner faced potential double payment if the funds it had entrusted to its contractor were not paid to its subcontractors.[16] Further, citing the decision in *Specialized Industries,* Judge Figa of the U.S. District Court of Colorado concluded that owners and general contractors may have standing under the statute.[17] In so doing, Judge Figa quoted the following language from the holding in *Specialized Industries*:

> It is of no moment that the property owner seeks to enforce the trust rather than a subcontractor. . . . The property owner clearly faces potential double payment. The subcontractor is protected by the mechanic's lien statute itself, [C.R.S. § 38-22-101 et seq.]. Thus, it is the property owner who is the principal beneficiary of the statutory

---

[3] *Barnes*, 377 B.R. at 297.

[4] *Id.* at 296-97.

[12] COLO. REV. STAT. § 38-22-127(1).

[13] *Syfrett v. Pullen*, 209 P.3d 1167, 1169 (Colo. Ct. App. 2008), *cert denied. sub nom Pullen v. Syfrett*, case no. (No. 09SC94, 2009 WL 1587905 (Colo. Jun. 8, 2009).

[14] *Id.* at 1170.

[15] 12 B.R. 546 (Bankr. D. Colo. 1981).

[16] *Id.* at 551.

[17] *Stetson Ridge Assocs., Ltd. v. Walker (In re Walker)*, 325 B.R. 598, 602-604.

trust.[18]

Standing raises a jurisdictional question and can, and should, be raised by the Court at any time.[19] Although not raised by the parties with respect to the Motion to Dismiss, the Court believes it must consider the standing issue to ensure that Plaintiff's claim presents a case or controversy under Article III of the United States Constitution.[20] In the absence of standing, there is no Article III case or controversy, and this Court does not have subject matter to hear Plaintiff's adversary complaint.[21] A plaintiff has the burden of establishing standing.[22]

In this case, Plaintiff asserts that, as owner of the project, it has standing to assert a claim under the Trust Fund Statute.

While Plaintiff is correct in asserting that the owner of a project *may* have standing under the Trust Fund Statute, its suggestion that it has standing simply by virtue of its status as owner, *alone*, is not correct. In *Syfrett*, the Colorado Court of Appeals recognized that, in order to establish standing under the Trust Fund Statute, a plaintiff asserting a claim under the Trust Fund Statute needs to prove it has suffered injury in fact that would entitle it to standing under the statute.[23] According to the Colorado Court of Appeals, "The General Assembly's purpose and intent behind the statute is 'to protect homeowners, laborers, and providers of construction materials from dishonest or profligate contractors.'"[24] "To meet this purpose, the statute imposes duties on the contractors to see that the subcontractors are paid."[25] The Court of Appeals further explained,

> A contractor breaches the statutory trust relationship by diverting the
> trust funds from the suppliers and laborers on the project to other
> corporate obligations . . . . Unless and until the suppliers and laborers
> are paid in full, the contractor cannot use any of the funds on a project
> to pay corporate overhead, compensation, or put them to any other

---

[18] *Id.* at 604 (quoting *Specialized Indus.*, 12 B.R. at 551).

[19] *Wilson v. Glenwood Intermountain Props., Inc.*, 98 F.3d 590, 592-593 (10th Cir.1996).

[20] *Rector v. City & County of Denver*, 348 F.3d 935, 942 (10th Cir.2003).

[21] *Wilson*, 98 F.3d at 593.

[22] *Rector*, 348 F.3d at 942.

[23] 209 F.3d at 1169 (citing *Wimberly v. Ettenberg*, 570 P.2d 535, 539 (Colo. 1977)).

[24] *AC Excavating, Inc. v. Yale*, – P.3d –, 2010 WL 3432219, *2 (Colo. Ct. App. Sept. 2, 2010)(quoting *Flooring Design Assocs., Inc. v. Novick*, 923 P.2d 216, 219 (Colo. Ct. App. 1995)).

[25] *Id.* (citing *Novick*, 923 P.2d at 219).

use.[26]

In this case, Plaintiff has *not* stated with any clarity that it is asserting *any* injury that arises from the nonpayment of contractors or subcontractors, as would be necessary to establish standing under the Trust Fund Statute. That is, although Plaintiff has asserted an injury arising from the overpayments it made in reliance upon the misrepresentations that Defendant made in the draw requests he submitted, it has not asserted an injury arising from the nonpayment of contractors, laborers, or suppliers, as is required to establish a violation of the express trust created by Trust Fund Statute.[27] Thus, Plaintiff should amend its Complaint so as to alleges the facts and circumstances giving rise to standing under the statute, without which it cannot state a claim for "fraud or defalcation while acting in a fiduciary capacity."

Under the facts as stated, however, it does appear that Plaintiff asserts a nondischargeability claim for "larceny" or "embezzlement" under 11 U.S.C. § 523(a)(4). If this is Plaintiff's intention, such claim must be stated with appropriate amendment.[28] Accordingly, pursuant to Rule 15 of the Federal Rules of Civil Procedure, the Court will allow Plaintiff to file an amended complaint.[29]

---

[26] *Id.* (citations omitted).

[27] Plaintiff does not allege that it faces any prospect of double payment, as in *Specialized Industries*, 12 B.R. at 551, nor that it has already made payment to avoid a lawsuit from a subcontractor, laborer or supplier, *see Corona Sierra v. Brennan (In re Brennan)*, 449 B.R. 114, 117, 118 (Bankr. D. Colo. 2011)(finding general contractor has standing where it had paid subcontractor's obligations to sub-subcontractors in order to secure release of lien on property), nor that it has even been threatened with suit by any subcontractor or supplier for nonpayment of funds actually owed for work performed or supplies provided for the Stout Project, *see Syfrett*, 209 P.3d at 1170, as would be required to establish standing under the Trust Fund Statute.

[28] As noted in Collier on Bankruptcy,

> The language of section 523(a)(4) relates to "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The phrase, "while acting in a fiduciary capacity" clearly qualifies the words "fraud or defalcation" and not "embezzlement" or "larceny." The import of the grammatical structure is that the discharge exception applies even when the embezzlement or larceny was committed by someone not acting as a fiduciary.

COLLIER ON BANKRUPTCY ¶ 523.10[1][d] (2011). As the allegations here appear to be sufficient to put Defendant on notice of a claim for nondischargeability predicated on embezzlement or larceny, such amendment would relate back to the original complaint. *Cf. Merrill, Lynch, Pierce, Fenner & Smith v. Tatum (In re Tatum)*, 60 B.R. 335, 337 (Bankr. D. Colo. 1986)(finding fraud allegations pled with particularity after dismissal of complaint containing merely bald allegations of fraud did not relate back because pleadings were not substantially similar). *See also First Nat'l Bank in Okeene v. Barnes*, 956 F. 2d 277, 1992 WL 33251 *2 (10th Cir. Feb. 18, 1992) (unpublished opinion)("In the absence of undue delay or prejudice, amendment may be permitted if the amendment claim arises out of the transaction or occurrence set forth in the original complaint.").

[29] Rule 15(a) of the Federal Rules of Civil Procedure provides that a court, in its discretion, "should freely give leave [to amend the pleadings] when justice so requires." FED. R. CIV. P. 15(a). *See also York v. Cherry Creek Sch. Dist. No.* 5, 232 F.R.D. 648, 649 (D. Colo. 2005); *Aspen Orthopaedics & Sports Medicine*, LLC v. Aspen Valley Hosp. Dist., 353 F.3d 832, 842 (10th Cir. 2003). In interpreting this Rule, the Supreme Court has held, "If

**B.     Claim for Nondischargeability for Fraud in the Inducement Pursuant to 11 U.S.C. § 523(a)(2)(A)**

Section 523(a)(2)(A) of the Bankruptcy Code provides that a debt will not be discharged in bankruptcy if it is "for money, property, services, or an extension, renewal, or refinancing of credit," to the extent that it was "obtained by false pretenses, a false representation, or actual fraud."[30]

Defendant contends that Plaintiff's claim under 11 U.S.C. § 523(a)(2)(A) is essentially a breach of contract claim – not a claim for nondischargeability – in that Plaintiff asserts that the Stout Project was not completed in accordance with the original plans or specifications.[31]  Further,

---

the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits." *Forman v. Davis*, 371 U.S. 178, 182 (1962).  *See also Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001)(stating that a "district court should allow a plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim").

Expanding on this, the Tenth Circuit has stated, "In dismissing a complaint for failure to state a claim, the court should grant leave to amend freely 'if it appears at all possible that the plaintiff can correct the defect.'" *Triplett v. LeFlore County, Okl.*, 712 F.2d 444, 446 (10th Cir.1983) (quoting 3 MOORE'S FEDERAL PRACTICE, ¶ 15.10 & n. 2 (1983)).  Indeed, "'[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.'" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)).

It is with these admonitions in mind that this Court entered Standing Order 2004-1-SBB.  In that Order, the Court states:

> Rule 12(b)(6) motions are discouraged if the defect is correctable by filing of an amended pleading.  If both Plaintiff and Defendant have counsel, counsel *must* confer with opposing counsel prior to the filing of the motion if the deficiency can be corrected by amendment and counsel must exercise their best efforts to stipulate or otherwise agree to appropriate amendments.  In the event that a Rule 12(b)(6) motion is filed, counsel shall state in said motion that counsel conferred with, or attempted to, confer with opposing counsel, and that the parties could not agree to correct and amend the pleading.

(Standing Order 2004-1-SBB, § C ¶ 1 (emphasis in original).)

Here, Defendant has failed to indicate whether he conferred with Plaintiff's counsel prior to filing the instant Motion to Dismiss.  Thus, the Court finds that, in the interests of justice, Plaintiff should be permitted to amend his complaint.

[30]  11 U.S.C. § 523(a)(2)(A).

[31]  Defendant also contends that Plaintiff's claim is barred by the economic loss rule. However, a claim for fraud in the inducement, which arises from representations made *prior* to the parties' entry into a contract, is a tort claim that arises independent of the duties imposed under the contract.  Therefore, the economic loss rule is inapplicable.  *See Haynes Trane Service Agency, Inc. v. American Standard, Inc.*, 573 F.3d 947, 962 (10th Cir.2009) (for duty to be "independent" of contract, and thus actionable in tort notwithstanding economic-loss rule, two

Defendant contends that Plaintiff fails to state with particularity any specific misrepresentations made by Defendant in inducement of the contract for the Stout Project in violation of Rule 9 of the Federal Rules of Civil Procedure. For its part, Plaintiff disputes that its claim is deficiently pled, but, moves, in the event that the Court finds it *is* deficient, to amend.

To establish a nondischargeable claim under section 523(a)(2)(A), Plaintiff must establish by a preponderance of the evidence that Defendant made a false representation, Defendant made the representation with the intent to deceive Plaintiff, Plaintiff relied on the representation, Plaintiff's reliance was justifiable, and Defendant's representation caused Plaintiff to sustain a loss.[32]

In this case, Plaintiff states that Defendant represented that the Stout Project would be built as per the specifications and plans set forth in the parties' contract; that Defendant "intentionally misrepresented that the [Stout] Project would be built as represented [in the contract] in order to induce Plaintiff to agree to purchase the land and enter into the construction contract,"[33] that Defendant's representations were "knowingly false," that Plaintiff's reliance on the representations was reasonable, and that Plaintiff suffered damages "by the use of nonconforming materials and/or substituted materials of lesser value and quality.[34]

In *Field v. Mans*, the Supreme Court held that the term "false representation" in section 523(a)(2) is defined under the Restatement (Second) of Torts as it existed in 1978 when this term was incorporated into the Bankruptcy Code.[35] Under the Restatement, "A representation of the maker's own intention to do or not do a particular thing is fraudulent if he does not have that intention."[36] "[A] debtor's promise or statement regarding his future intention may constitute false representation under section 523(a)(2)(A) if the debtor has no present intention of performing it."[37]

---

conditions must be met: first, the duty must arise from a source other than the relevant contract, and second, the duty must not be duty also imposed by the contract)(citing Colorado cases). *See also BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004) ("Contract law is intended to enforce the expectancy interests created by the parties' promises so that they can allocate risks and costs during their bargaining.")(internal quotation omitted).

[32] *Field v. Mans*, 516 U.S. 59 (1995); *In re Riebesell*, 586 F.3d 782, 789 (10th Cir. 2009). Plaintiff asserts that it "reasonably relied" on Defendant's alleged misrepresentations. This no longer the proper standard after *Field v. Mans*. However, as the justifiable reliance standard is less burdensome than the reasonable reliance standard, *Field v. Mans*, 516 U.S. 59 (1995), the Court finds that the notice pleading burden was met by Plaintiff's assertion of reasonable reliance.

[33] Complaint, ¶ 51.

[34] Plaintiff states that it suffered damages by use of nonconforming and/or substituted materials in its Complaint. This allegation is, in fact, indicative of a contract claim.

[35] 516 U.S. 59, 70 (1995).

[36] Restatement (2d) of Torts § 530(1) (2011).

[37] *Daniels v. Clark*, Case Nos. WO-01-026, 00-13887, 00-1234, 2002 WL 1821600, *4 (10th Cir. BAP. Aug. 9, 2002)(unpublished decision) (citations omitted).

Plaintiff properly states most of the elements of its claim with particularly, for it asserts that Defendant knowingly and intentionally misrepresented that Talus would perform in accordance with the contract to build the Stout Project, although he had no intention of Talus' so performing, and that Defendant did so with the intention of inducing Plaintiff into entering the contract.

The Plaintiff, nevertheless, needs to state with particularity which damages the Plaintiff asserts arise from misrepresentations.[38] The Court will permit the Plaintiff the opportunity to amend its Complaint to allow the Plaintiff to further refine which damages the Plaintiff alleges it suffered by virtue of its entry into the contract in reliance on Defendants' false representations.[39]

The Tenth Circuit has emphasized that a "district court should allow a plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim."[40] Accordingly, and because this litigation is in an early stage, the Court will grant Plaintiff's request for leave to amend the Complaint to cure this error.

### C. Claim for Nondischargeability for Fraudulent Misrepresentation Pursuant to 11 U.S.C. § 523(a)(2)(A)

Again, a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud" is nondischargeable under section 523(a)(2)(A). To establish a nondischargeable claim under section 523(a)(2)(A), Plaintiff must establish by a preponderance of the evidence that Defendant made a false representation, Defendant made the representation with the intent to deceive Plaintiff, Plaintiff relied on the representation, Plaintiff's reliance was justifiable, and Defendant's representation caused Plaintiff to sustain a loss.[41]

Plaintiff asserts that Defendant's submission of draw requests in which he stated that services for all amounts for which payment was requested had been completed satisfactorily, when

---

[38] Complaint, ¶ 19.

[39] *See Commonwealth of Pennsylvania v. Burns (In re Burns)*, 2008 WL 2782659, *3 (Bankr. M.D. Pa. Jul. 11, 2008)("[G]enerally, when determining whether a contractor committed fraud in connection with a construction project, the question pivots on whether during the negotiations the contractor induced the property owner into signing the contract by making material false representations, like falsely promising to obtain the necessary permits or overstating his qualifications."); *Spinoso v. Heilman (In re Heilman)*, 241 B.R. 137, 150 (Bankr.D.Md.1999) ("For a breach of contract to result in a nondischargeable debt, the debtor must have misrepresented his or her intention to perform contractual duties . . . .").

[40] *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir.2001)).

[41] *Field v. Mans*, 516 U.S. 59 (1995); *In re Riebesell*, 586 F.3d 782, 789 (10th Cir. 2009). Plaintiff asserts that it "reasonably relied" on Defendant's alleged misrepresentations. This no longer the proper standard after *Field v. Mans*. However, as the justifiable reliance standard is less burdensome than the reasonable reliance standard, *Field v. Mans*, 516 U.S. 59 (1995), the Court finds that the notice pleading burden was met by Plaintiff's assertion of reasonable reliance.

10

in fact, such work had not been completed in accordance with the agreed-upon plans and specifications, constitutes fraudulent misrepresentation. Specifically, Plaintiff asserts that Defendant knowingly made false representations in the draw requests with the intent that Plaintiff would rely upon them. Plaintiff further asserts that it reasonably[42] relied upon them, and that it was injured as a result of making payments for the amounts requested.

Defendant asserts that Plaintiff's claim for fraudulent misrepresentation as relates to the draw requests is not pled with particularity, in that Plaintiff fails to state the date or amount of the allegedly fraudulent draw requests or to provide other pertinent information that would identify the specific statements that Plaintiff contends were fraudulent. Further, Defendant contends, Plaintiff's claim is merely that the work that was done was unsatisfactory – not that it was not performed. This, in Defendant's mind, indicates that the claim is really a contract claim rather than a claim of fraudulent misrepresentation.

Because Plaintiff pleads its claim as one for money "obtained by false pretenses, a false representation, or actual fraud" under 11 U.S.C. § 523(a)(2), Rule 9(b) applies. Under that Rule, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[43] Rule 9(b) is considered together with Rule 8,[44] which provides, "A pleading that states a claim for relief must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief."[45] Under Rule 8, "[e]ach allegation must be simple, concise, and direct."[46] Further, courts must construe pleadings "so as to do justice."[47]

          1.      <u>Misrepresentations in Draw Requests</u>

Here, the allegation is implicit in the Complaint that, by submitting draw requests for the work identified therein, Defendant represented that such work had been performed pursuant to the plans and specifications set forth in the parties' Contract, when in fact, it had not. Thus, the claim is not based on Plaintiff's failure to perform the work required by the Contract, but rather on Defendant's misrepresentation that the work identified in the Contract had been properly performed in order to induce Plaintiff to pay for the work, though it would not have been required to pay for work not done according to the Contract. Defendant's objection that this is nothing more than a

---

[42] Again, per *Field v. Mans*, 516 U.S. 59 (1995), the standard is justifiable reliance – not reasonable reliance.

[43] FED. R. CIV. P. 9(b).

[44] *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997).

[45] FED. R. CIV. P. 8(a)(2).

[46] FED. R. CIV. P. 8(d)(1).

[47] FED. R. CIV. P. 8(e).

11

contract claim, therefore, is not sustained. Defendant's objection is well taken, however, that Plaintiff fails to identify any specific misrepresentation that was made in any of the draw requests that Defendant submitted. For example, it is impossible to tell from the Complaint what specific kinds of work Plaintiff believes were not performed according to the plans and/or specifications. Was the plumbing substandard? Was the electrical work imperfect? Was the drywall used not the type upon which the parties had agreed? In the absence of such detail, and in the absence of information regarding the approximate dates of the allegedly fraudulent draw requests and the approximate amounts of such requests, it cannot be said that Plaintiff has pled its claim with particularity. At this early stage of the case, however, dismissal could deprive Plaintiff of the opportunity to test a valid claim on the merits. Therefore, permitting the amendment of this claim, too, is appropriate.

2. Failure to Carry Insurance

In addition to alleging that Defendant made false representations regarding the satisfactory performance of work at the Stout Project, Plaintiff asserts that Defendant knowingly made false representations to Plaintiff that it carried general liability insurance, as well as workers' compensation insurance for all subcontractors and workers. Defendant contends failure to carry insurance does not constitute a false representation pursuant to section 523(a)(2)(A). He further contends that Plaintiff fails to set forth any fact or allegation that it was injured by Talus' failure to do so.

The Court agrees that Plaintiff has failed to state a claim under section 523(a)(2)(A) in relation to Talus's failure to carry insurance. Specifically, the Court finds that Plaintiff has not pled any facts that indicate that it relied on Defendants' representations that it carried insurance, nor that Plaintiff's reliance caused it to sustain a loss as a result. Though the Court questions whether this claim is really anything more than a claim for breach of contract, it will grant Plaintiff leave to amend so that it may attempt to cure this deficiency or withdraw the claim as appropriate.

**D.    Claim Nondischargeability for Tortious Interference with Business Under 11 U.S.C. § 523(a)(6)**

Section 523(a)(6) excepts from discharge debts resulting from "willful and malicious injury by the debtor to another entity or to the property of another entity."[48] This language means "that the actor intend[ed] the consequences of an act, not simply the act itself."[49] For a debt to be nondischargeable under 11 U.S.C. § 523(a)(6), "the debtor must desire to cause the consequences of his act or believe that the consequences are substantially certain to result from it."[50] The "willful and malicious injury" language, "[b]y its terms, . . . may apply to a broad range of [tortious]

---

[48]   11 U.S.C. § 523(a)(6).

[49]   *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

[50]   *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10 th Cir. 2004).

12

conduct causing harm to people or property."[51]

Plaintiff asserts that "[b]y telling the subcontractors they could no longer perform any services for Plaintiff on the Project or honor their warranty work, Defendant was intentionally interfering with Plaintiff's business contracts with those subcontractors."[52] Plaintiff states that it suffered damages on account of such interference. Further, Plaintiff contends, by falsely telling realtors and subcontractors that Plaintiff did not have the funds it needed to complete the Stout Project, Defendant intentionally and maliciously interfered with Plaintiff's business contracts with potential buyers and subcontractors.[53] Plaintiff states that it suffered damages as a result of this interference as well. According to Plaintiff, these damages constitute a debt that Defendant owes to Plaintiff which results from Defendant's willful and malicious actions.

1. Interference with Contracts with Subcontractors

Under Colorado law, the tort of intentional interference with existing contractual relations[54] requires the plaintiff to prove that the defendant (1) was aware of a contract between two parties, (2) intend that one of the parties breach the contract, (3) and induce the party to breach or make it impossible for the party to perform the contract, resulting in damages to the plaintiff.[55] In addition, the defendant must have acted "improperly" in causing the result.[56] In determining whether the defendant acted improperly, the court is to consider:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's

---

[51] *Id.*

[52] Complaint, ¶ 66.

[53] Complaint, ¶ 68.

[54] Defendant contends that this claim, and the claims below related to fraudulent recordation, are barred by the economic loss rule. The Court disagrees, as the duty not to interfere with others' contracts does not arise from the contract between Talus and Plaintiff, and as the duty not to record fraudulent liens also arises independently of the contract. *See Dufficy*, 99 P.3d at 77.

[55] *Krystkowiak v. W.O. Brisben Cos., Inc.*, 90 P.3d 859, 871 (Colo. 2004); *Carman v. Heber*, 601 P.2d 646, 647 (Colo. App. 1979).

[56] *Id.*

13

conduct to the interference, and (g) the relation between the parties.[57]

The allegation is implicit in Plaintiff's Complaint that Defendant knew that the subcontractors had contractual obligations to Plaintiff. Further, Plaintiff properly alleges that Defendant intended to induce – or coerce, threaten, and/or intimidate – the subcontractors to breach those obligations, resulting in damages to Plaintiff. Further, Plaintiff has alleged that this conduct was willful and malicious. Plaintiff has properly stated a claim for relief insofar as that claim relates to the Defendant's behavior toward the subcontractors on the Stout Project.

2. Interference with Contracts Resulting from Removal of Lockboxes

Colorado law also recognizes a claim for interference with prospective business relations between a plaintiff and a third party. The Colorado Court of Appeals has identified the elements of that claim "(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation."[58] According to the Court of Appeals, "In order to prove this form of the tort, it is not necessary to show that an underlying contract exists, but, rather, the plaintiff must show that intentional and improper interference prevented a contract from being formed."[59] As with the tort for interference with existing contractual relations, a plaintiff asserting a claim for interference with prospective business relations must show that the defendant acted improperly.[46]

Plaintiff's allegations that Defendant's removal of the lockboxes prevented its realtor from showing the Stout Project to potential clients, along with its allegation that such removal was intentional and malicious, are sufficient to state a claim under section 523(a)(6) for nondischargeability based upon tortious interference with prospective business relations.

E. **Claim for Nondischargeability** f**or Recordation of Fraudulent Document Under 11 U.S.C. § 523(a)(2)(A) and (6)**

Plaintiff asserts that Defendant signed and recorded a spurious Statement of Lien and amendments thereto on the Stout Project. According to Plaintiff, the Statement of Lien was groundless and contained material misstatements and false claims in that it stated that amounts were due and owing to Talus that were not in fact owed. Further, Plaintiff claims that Defendant filed the spurious lien documents knowing that they were invalid and false, and then refused to release those documents when Plaintiff requested that he do so. Plaintiff contends it suffered damages thereby.

---

[57] *Id.* (quoting *Trimble v. City & County of Denver*, 697 P.2d 716, 726 (Colo.1985)). *See also Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1195 (Colo. Ct. App. 2009) (stating elements of claim for tort of interference with existing contractual relations).

[58] *Robinson*, 209 P.3d at 1195-96.

[59] *Id.* (citing *Dolton v. Capitol Fed. Sav. & Loan Ass'n*, 642 P.2d 21, 23 (Colo.App.1981)).

[46] *Id.*

14

      1.      Nondischargeability Pursuant to 11 U.S.C. § 523(a)(2)(A)

As discussed above, in order to state a claim under 11 U.S.C. § 523(a)(2)(A), a plaintiff must show that "[t]he debtor made a false representation; the debtor made the representation with the intent to deceive the creditor; the creditor relied on the representation; the creditor's reliance was justifiable; and the debtor's representation caused the creditor to sustain a loss.'"[47]  Here, Plaintiff fails to state a claim for relief because it fails to assert that Defendant made any false representation in the spurious lien documents with intent to deceive *Plaintiff*, and also because it fails to assert that *Plaintiff* relied on Defendant's representation.  Indeed, Plaintiff acknowledges that it knew that the documents were fallacious, and that it, therefore, asked Defendant to release the lien. Without intent to deceive Plaintiff, and without reliance on an allegedly deceptive statement, Plaintiff has no claim under 11 U.S.C. § 523(a)(2)(A).  This conduct might be actionable under another theory of contract or tort law, but not under 11 U.S.C. § 523(a)(2)(A).

      2.      Nondischargeability Pursuant to 11 U.S.C. § 523(a)(6)

Under § 523(a)(6), a debtor is denied discharge from liabilities arising out of "willful and malicious injury" to another or another's property.  Debts arising from the willful and malicious recording of a spurious lien may be nondischargeable pursuant to this section of the Bankruptcy Code.[48]

In this case, Plaintiff has properly stated that Defendant knowingly, willfully, and maliciously recorded lien documents that he knew were false, resulting in injury to Plaintiff.[49]  This is sufficient to state a claim under § 523(a)(6).

---

[47] *In re Riebesell*, -- F.3d -- , 2009 WL 3448743 at *4 (10th Cir. 2009) (quoting *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996)).

[48] *See Michalski v. Duvall (In re Duvall),* Adv. No. 08-1527-HRT, 2009 WL 3367092 (Bankr. D. Colo. Oct. 9, 2009)(recognizing validity of § 523(a)(6) claim predicated on debtors' filing of spurious lien that clouded title on plaintiffs' property and allegedly prevented them from selling it).

[49] Defendant protests that Plaintiff has failed to make specific allegations regarding willful and malicious injury.  However, Plaintiff's § 523(a)(6) claim is not subject to the heightened pleading standard of Rule 9, *Guerriero v. Kilroy (In re Kilroy)*, 354 B.R. 476, 489 (Bankr. S.D. Tex. 2006) and Plaintiff has properly made general allegations that Defendant acted willfully and maliciously, which the Court finds to be sufficient to satisfy the notice pleading standard under Rule 8.

## V.    **CONCLUSION AND ORDER**

For the foregoing reasons, the Court concludes that the motion to dismiss should be denied and Plaintiff given leave to amend. Accordingly, it is

ORDERED that Defendants' Motion to Dismiss Adversary Proceeding is DENIED.

FURTHER ORDERED that, within fourteen (14) days of the date of this Order, Plaintiff may file an amended complaint, failing which the claims identified as deficient above may be dismissed.

Dated this 28th day of February, 2012.

BY THE COURT:

_____
Sidney B. Brooks,
United States Bankruptcy Judge